**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| **SHELBY CHEATHAM** | | **PLAINTIFF** |
| v. | **4:20-CV-865** | |
| **MCKENDRA ADAMS** | | **DEFENDANT** |

**MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS**

# INTRODUCTION

**COMES NOW** Defendant, by and through counsel Matthew A. Kezhaya ABA # 2014161, on motion to dismiss pursuant to FRCP 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted).

The Court should dismiss Cheatham's cause of action for three reasons. First, Cheatham lacks standing because she pleads no facts that, taken as true, give rise to a finding of a concrete and particularized injury-in-fact. Second, Cheatham's complaint does not articulate a basis for FDCPA or AFDCPA relief because Adams's email was to Cheatham's attorney, not to Cheatham; and, even then, was in response to a demand for verification of debt. Third, Cheatham's complaint does not articulate a basis for AFDCPA relief because it is an Arkansas cause of action and Arkansas lawyers–like Adams– are immune to non-fraud suits from their opposing parties.

This is a renewed motion. After the first motion, Plaintiff amended his complaint. The amendment still does not allege a constitutional harm, retains the dispositive fact that the discovery responses were received by the attorney (not Cheatham), and does not address the fact that Adams has attorney immunity to the Arkansas cause of action. These facts simply don't support a finding of FDCPA liability. The Court should dismiss with prejudice.

## ARGUMENT

**Legal standard**

This motion confines itself to the allegations of the amended complaint. See Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016). The standing attack is a facial attack. To assess it, the Court is restricted to the face of the pleadings and the non-moving party receives the same protections as it would in defending against a motion brought under Rule 12(b)(6). Id.

The Rule 12(b)(6) standard is well known. It construes the well-pleaded allegations of fact–not conclusions of law and not "flat" conclusions of fact–to determine if the complaint survives a motion to dismiss. E.g. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Legal conclusions are afforded no deference. Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do") (internal quotes omitted). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. Twombly, 550 U.S. at 555.

**Summary of complaint**

Based on the foregoing standard, the well-pleaded factual allegations of the amended complaint presents the following fact pattern. McKendra Adams is a debt collection attorney in Hot Springs. Amended complaint at ¶¶ 11-16. In 2019, Adams sued Cheatham on behalf of her client for an outstanding debt on a vehicle note. Amended complaint at ¶¶ 17-24.

Cheatham hired an attorney who filed an answer on October 2, and, at some point propounded discovery requests. Amended complaint at ¶¶ 27-29. On October 31, Adams responded to the discovery requests by email "to Cheatham's attorney." Amended complaint at ¶ 30. Later, the state

.
.

court ruled in favor of Cheatham, dismissed the case, and awarded Cheatham attorney's fees. Amended complaint at ¶¶ 30-31.

Thus ends the well-pleaded fact allegations. There are a number of conclusory allegations of fact or assertions of law which "will not do." Iqbal, 556 U.S. at 678. Of importance to this motion, see Amended complaint at ¶¶ 1-4 (an introduction), 12-14 (formulaic recitations), 17 (characterizing the debt as "primarily for personal, family, or household purposes" without addressing facts that lead to this conclusion), 30 (the latter half: "This email was Adams' 'initial communication' with Cheatham as that term has been interpreted as used in 15 U.S.C. § 1692(a), and Ark. Code Ann. § 17-24-508(a)"), 38-47 (conclusory standing allegations), and 48-53 (formulaic recitation of elements for causes asserted).

Also important is what the complaint does not say. The complaint is silent about whether Adams ever had any direct communication with *Cheatham*–not Cheatham's lawyer. It does not address when, exactly, Cheatham's attorney sent the discovery requests. It does not address the subject matter of Cheatham's discovery requests. It does not address the contents of the discovery responses or the email. And it is silent about the thirty-day period before the date Adams sent the discovery responses, i.e. verified the debt. Based on the fact that the answer was filed on October 2 and discovery requests were responded to on October 31, the likely answer is "nothing."

The amended complaint adds one odd allegation that is something between "not saying anything" and "conclusory fact allegation." See Amended complaint at ¶ 36. Cheatham alleges that Adams never provided Cheatham with the verification rights notice nor a notice that she was a debt collector attempting to collect a debt. For this to have any meaning, it presupposes there was an "initial communication" at some point. But the amended complaint never alleges any communication took place between Adams and Cheatham without Cheatham's attorney interposed.

**1: Cheatham lacks standing because she has not alleged an "injury-in-fact."**

The Court lacks subject matter jurisdiction because Cheatham has not alleged an "injury-in-fact." FRCP 12(b)(1).  For this standing issue, the FDCPA and the AFDCPA are collectively referred to as the FDCPA.  The distinction is irrelevant here because at issue is this Court's power to hear the case.

To vest this Court with subject matter jurisdiction, a plaintiff must first allege the "irreducible constitutional minimum" of standing.  E.g. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016).  There are three elements to standing, "first and foremost" of which is injury in fact.  See id., 136 S. Ct. at 1547.

To establish an injury in fact, the plaintiff must show a "particularized" and "concrete" injury which is "actual," not "hypothetical."  Id., 136 at 1548.  To satisfy the particularized prong, the plaintiff's injury "must affect the plaintiff in a personal and individual way."  Id.  A plaintiff cannot assert the rights of others, the plaintiff must allege that they, particularly, have been harmed.  See id.

Particularization is necessary but not sufficient.  The harm must also be "concrete," i.e. real and not abstract.  Id.  The Spokeo Court was clear that "concrete" does not only mean "tangible," but an intangible harm must bear a "close relationship to a harm that has been traditionally regarded as providing a basis for a lawsuit in English or American courts."  Id. at 1549.

Cheatham's complaint strenuously contends that the FDCPA "represents congressional judgment that Cheatham's injury is sufficient to confer standing." Amended complaint at ¶ 41.  It could be true that *Congress* thought that a procedural violation is sufficient to confer standing, but Congress is not the arbiter of the Constitution.  The courts are.  A plaintiff cannot, "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  Spokeo, 136 S. Ct. at 1549.

The Eighth Circuit has taken Spokeo to heart. Braitberg v. Charter Commc'ns, Inc., 836 F.3d 925 (8th Cir. 2016). There, a consumer sued a telecommunications company for retaining his personally identifiable information in violation of the Cable Communications Policy Act. He did not allege that the company "disclosed the information to a third party, that any outside party has accessed the data, or that Charter [the company] has used the information in any way during the disputed period." Id., 836 F.3d at 930. He alleged a bare procedural violation, so the case was properly dismissed.

The Seventh Circuit has considered standing in the FDCPA context. Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329 (7th Cir. 2019). There, a plaintiff complained of receiving an incomplete letter under the statute at issue here. The letter she received informed her that she had a mechanism to verify the debt, but failed to specify that the request must be made in writing. She did not take any action to verify the debt and never alleged that she intended to. Id., 926 F.3d at 335. That case was properly dismissed because she "caught the defendant in a mistake, but it was not one that hurt her." Id. at 339.

The Casillas Court rejects Cheatham's point that Congress vested her with a right to bring a federal lawsuit to complain only about a procedural violation. Id., at 333 ("the fact that Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement of the Fair Debt Collection Practices Act,' 15 U.S.C. § 1692k(a), does not mean that Casillas has standing.". Casillas lacked standing because she alleged "nothing more than a bare procedural violation" which is "insufficient" to show standing. Id., at 339. The bottom line is: "no harm, no foul." Id. at 331.

Based on the above, Cheatham has not even *alleged* standing. The closest Cheatham comes to arguing a real injury is that Cheatham "lost the thirty-day pause in collection activity, a substantive right, while Adams' [sic] verified the debt as required by the FDCPA." Amended complaint at ¶ 43.

But it does not allege that Cheatham was deprived of the right *to* verify the debt.  Or that Adams prompted any meaningful litigation in the thirty-day window before she sent the discovery responses on October 31.  Cheatham's complaint does not paint any facts about what happened in the thirty-day period before October 31.  Given that the answer was filed on October 2 (Amended complaint at ¶ 27) it is probably "nothing."  The amended complaint does not address this issue.

And Cheatham did not even bear the cost of attorney's fees: the state court ordered fee shifting.  Amended complaint at ¶ 35.  To the extent there was any doubt whether Cheatham was fully compensated for the defense, the amended complaint dispels it.  Amended complaint at Exhibits 4 and 8. (Cheatham paid $1050 to his attorney and was granted attorney's fees in the amount of $1050).

The principle difference between the two versions of the complaint was adding citations to various fact allegations.  Compare complaint at ¶¶ 32-37 (one citation) with amended complaint at ¶¶ 38-5-47 (several case citations).  This is lazy lawyering.  Citations without discussion offload the proponent's burden to make reasoned arguments onto the opposing party.

Only one case bears mentioning.  See amended complaint at ¶ 41 (quoting Spokeo, 136 S.Ct. at 1549) ("In some cases, a plaintiff need not allege any additional harm beyond the one Congress has identified).  After making that statement, the Spokeo Court cites two cases: Federal Election Comm'n v. Akins, 524 U.S. 11, 20–25, 118 S.Ct. 1777 (1998) and Public Citizen v. Department of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558 (1989).

In Akins, the Federal Election Commission ("**FEC**") dismissed a complaint against the plaintiffs on a technical campaign issue.  The details are irrelevant for purposes of this motion.  The plaintiffs sued to seek review of the FEC's dismissal.  524 U.S. at 18.  The plaintiffs had standing because the statute at issue provided "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such a party . . . may file a petition" to seek review.  Id. at 19 (quoting from what is now 52

USC § 30109). Plaintiffs had a concrete injury, "failure to obtain relevant information," which is the what the statute sought to address. Id. at 20. This injury is not a bare procedural violation.

Public Citizen is substantially identical. There, plaintiffs sued for violation of the Freedom of Information Act. Id., 491 U.S. at 449. The concrete harm is being deprived of information which a statute puts forth a substantive right to see.

The FDCPA does not offer a substantive right to receive a notification that a debt collector is trying to collect a debt. Instead, the FDCPA's substantive right is stopping debt collectors from fraudulent and unconscionable practices. A notification that a debt collector is trying to collect a debt makes sense when the debt collector is communicating with a layperson. That logic breaks down when, as here, the debt collector is responding to discovery requests issued by the debtor's attorney. Powers v. Credit Mgmt. Servs., Inc., 776 F.3d 567, 574 (8th Cir. 2015) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.")

Cheatham complains about a bare procedural violation. Bare procedural violations do not confer standing regardless of what Congress intended. The Court should dismiss the case with prejudice.

## 2: Cheatham has not alleged a violation of the FDCPA because Adams's communication was not with Cheatham.

The next problem with the complaint is that alleges the legal conclusion that Adams's email providing discovery responses to Cheatham's attorney was an "initial communication" within the meaning of 15 U.S.C. § 1692g(a) and Ark. Code Ann. § 17-24-508(a). Amended complaint at ¶ 30. This issue also addresses the FDCPA and AFDCPA claims in tandem. The distinction is irrelevant because both statutes set forth the following requirement: within five days after the "initial

communication **with a consumer**," the debt collector must send a specified written notice. Ibid. (emphasis added).

The plain text of the statutes trigger the notice after communication "with a consumer;" not "or his attorney." Cheatham has not stated an FDCPA violation because his complaint is that his *attorney* received the email. Amended complaint at ¶ 30. Not Cheatham.

Cheatham's complaint claims without citation that this "or his attorney" language has been interpreted into the acts. Amended complaint at ¶ 30. Diligent research by counsel cannot find this. The A.L.R. article on point does not say this. See Construction and Application of Provision of Fair Debt Collection Practices Act Relating To Validation of Debts (15 U.S.C.A. § 1692g), 150 A.L.R. Fed. 101.

The Ninth Circuit has plainly held the opposite. Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 936 (9th Cir. 2007) ("we hold that communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the Act") (note omitted). The Eighth Circuit has implicitly held the opposite. Powers v. Credit Mgmt. Servs., Inc., 776 F.3d 567, 574 (8th Cir. 2015) ("Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior.")

Contrary to the complaint, ACA § 17-24-508 only has one reference in Westlaw and it doesn't say this. See Wilder v. Credit Control Co. Inc., No. 4:18-CV-00344-KGB, 2019 WL 2402955 (E.D. Ark. June 5, 2019) (granting summary judgment because the "demand letter would not have confused or mislead even an unsophisticated consumer about the rights outlined in the validation notice.")

The closest case counsel could find to being on point is <u>Derisme v. Hunt Leibert Jacobson P.C.</u>, 880 F. Supp. 2d 339 (D. Conn. 2012).  There, a debtor sent three "complaint letters" to a debt collector alleging violations of the FDCPA.  The debt collector responded and never gave the validation notice.

Importantly to the <u>Derisme</u> Court, the response did not include a demand for payment or threaten to take any further action to collect the debt.  Id., 880 F.Supp.2d at 372.  This was not an "initial communication" because it was "merely informational."  <u>Id.</u> (collecting cases).  Additionally, it was not an "initial communication" because the communication was initiated by someone other than the debt collector."  <u>Id.</u>

The <u>Casillas</u> Court addressed the substantive purpose behind the validation requirement.  <u>Casillas</u>, 926 F.3d at 333-34.  It helps protect debtors from "the use of abusive, deceptive and unfair debt collection practices" (quoting 15 USC § 1692(a)), (1) by "giving debtors a way to dispute or verify their supposed debts;" and (2) by "obligating creditors to tell debtors how to do that," it reduces the risk that debtors will "inadvertently lose the protections given to those who observe the statutory requirements."  <u>Id.</u>

The <u>Derisme</u> Court is persuasive.  Here as there, we have no which suggests the email providing discovery responses demanded payment or threatened some further action.  Here as there, it is "undeniable Plaintiff initiated the communication," so "[t]he policy reasons behind the FDCPA were[ ]simply not implicated" by the response.  <u>Id.</u>, at 372-73.  This case goes even further than Derisme.  At least there, the debt collector sent a response to the *debtor*.  Here, the response was issued to "Cheatham's *attorney*."  Amended complaint at ¶ 28 (emphasis added).

Based on the above, the FDCPA is concerned with unrepresented debtors who receive a communication from a debt collector which is not a response to an information request the debtor made at the outset.  This case could not be more different.  Cheatham was represented, initiated the

communication at issue by sending discovery requests, and didn't even receive the discovery responses himself. Just as in Powers, Cheatham's attorney was "interposed as an intermediary" between Adams and Cheatham, so the law presumes that Cheatham's attorney, not the FDCPA, protects Cheatham from the "fraudulent or harassing behavior," i.e. responding to Cheatham's discovery requests.

It bears noting that the amended complaint declines to substantiate its claim that an "initial communication" has been interpreted to include a debt collector's response to a debtor's discovery requests via email to the debtor's attorney. See amended complaint at ¶ 30. It appears to be a bluff.

Moreover, the claim is fundamentally at odds with Powers, which rejects a class of debtors' argument that discovery requests to a debtor's attorney can violate the FDCPA. Id., 776 F.3d at 574 ("a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable.") So, too, here. Cheatham's complaint fails to identify how a competent lawyer would be deceived by discovery *responses*.

In sum, Cheatham's complaint fails to state an FDCPA or AFDCPA violation because (1) Cheatham is responsible for initiating the communication; (2) the response was issued to Cheatham's attorney, who is not the "consumer;" and (3) there are no facts alleged which suggest the email demanded payment or threatened some further debt collection action. The Court should dismiss the complaint with prejudice.

### 3: Adams has Arkansas attorney immunity from the AFDCPA claim.

Last, Cheatham has failed to state an AFDCPA claim because Adams has Arkansas attorney immunity. See ACA § 16-22-310; Born v. Hosto & Buchan, PLLC, 2010 Ark. 292, 372 S.W.3d 324. Arkansas attorneys are generally immune to civil liability from those not in privity of contract with them for actions taken during the course of their employment as attorneys. ACA § 16-22-310; Born, 2010 Ark. 292 at 5. The only exception is fraud and intentional misrepresentations, neither of which

are at issue. The FDCPA may preempt Adams's attorney immunity, see 15 USC § 1692n, but this says nothing about the AFDCPA.

Attorney immunity is founded on an important policy. Attorneys owe a complete and unflinching fiduciary duty of loyalty to their clients and, "to create a duty in an attorney which flows both to the client and to the opposing party seems to be untenable and in diametric conflict." Born at *15.

Cheatham complains that Adams violated the AFDCPA when Adams responded to discovery on behalf of her client. E.g. Amended complaint at ¶¶ 29 and 30. The complaint does not allege that Cheatham was Adams's client; it alleges the opposite. Amended complaint at ¶ 24 ("Adams filed a debt collection complaint . . . against Cheatham.") Thus, Adams is entitled to immunity from the AFDCPA claim. It bears noting that the amended complaints makes no effort to address Adams's attorney immunity.

## CONCLUSION / PRAYER FOR RELIEF

Cheatham won a debt defense case and, as a victory lap, has brought an FDCPA complaint. The complaint should be dismissed with prejudice. At best, it alleges a bare procedural violation. This is insufficient, alone, to allege standing. The claim that Cheatham was "deprived" of a thirty day pause is belied by the fact that Cheatham initiated discovery in the thirty day window before October 31.

Moreover, Cheatham has not even alleged a bare procedural violation. In absence of a communication "to Cheatham" and not "to Cheatham's attorney," Adams's FDCPA validation requirement was never triggered. And even then, Cheatham's attorney initiated the communication. This is not the harm that Congress sought to prevent by enacting the FDCPA. The same can be said for the General Assembly. As for the AFDCPA, it fails as a matter of law because Adams has attorney immunity to all non-fraud state causes of action.

**WHEREFORE** Defendant prays this Court enter an order dismissing the complaint with prejudice.

|  | Respectfully submitted on October 1, 2020, on behalf of McKendra Adams |
|---:|:---|
| By: | /s/ Matthew A. Kezhaya |
|  | Matthew A. Kezhaya, ABA# 2014161 |
|  | **Kezhaya Law PLC** |
|  | 1202 NE McClain Rd |
|  | Bentonville, AR 72712 |
| phone: | (479) 431-6112 |
| facsimile: | (479) 282-2892 |
| email: | matt@kezhaya.law |

### CERTIFICATE AND NOTICE OF SERVICE

**NOTICE IS GIVEN** that I, Matthew A. Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system which sends service to registered users including opposing counsel in this cause.  /s/ Matthew A. Kezhaya