# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**SHELBY CHEATHAM**                                                                                    **PLAINTIFF**

v.                                      Case No.: 4:20-cv-00865-LPR

**MCKENDRA ADAMS**                                                                                    **DEFENDANT**

## ORDER

Plaintiff Shelby Cheatham filed this lawsuit alleging that Defendant McKendra Adams violated the Fair Debt Collection Practices Act ("FDCPA") and the Arkansas Fair Debt Collection Practices Act ("AFDCPA"). Ms. Adams filed a Motion to Dismiss with Prejudice for lack of standing and for failure to state a claim. For the reasons discussed below, the Motion is GRANTED in part. The case will be dismissed, but without prejudice.

## I. BACKGROUND[1]

Ms. Adams is a self-described debt collection attorney.[2] One of her clients is John Gibson Auto Sales, Inc. ("Gibson Auto").[3] In February 2017, Mr. Cheatham financed the purchase of a car from Gibson Auto through a "Retail Installment Sale Contract."[4] Mr. Cheatham defaulted on that contract and voluntarily surrendered the car to Gibson Auto.[5] On May 11, 2017, Gibson Auto sent Mr. Cheatham a "Mandatory Notice of Private or Public Sale," informing Mr. Cheatham that

---

[1] All facts in this Background Section are taken from Mr. Cheatham's First Amended Complaint and are taken as true for purposes of this Order.

[2] Pl.'s First Am. Compl. (Doc. 4) ¶ 15.

[3] *Id.* ¶¶ 1, 13–16.

[4] *Id.* ¶¶ 17–19.

[5] *Id.* ¶¶ 20–21.

the car would be sold at a public sale.[6]  The proceeds from that public sale did not fully satisfy the debt Mr. Cheatham owed to Gibson Auto.

On July 27, 2019, Gibson Auto (represented by Ms. Adams) filed a lawsuit in Arkansas state court to obtain a deficiency judgment against Mr. Cheatham in favor of Gibson Auto.[7]  Ultimately, Mr. Cheatham prevailed in this lawsuit because the May 11, 2017 Notice sent by Gibson Auto was deficient under Arkansas law.[8]  Mr. Cheatham's debt to Gibson Auto was declared legally unenforceable and Mr. Cheatham was awarded attorney's fees.[9]  The state court lawsuit was a complete victory for Mr. Cheatham.  Not only was his debt gone, but his attorney was paid for by his former creditor.

Now Mr. Cheatham seems to want to press his advantage.  Mr. Cheatham brings the instant federal lawsuit against Gibson Auto's attorney, Ms. Adams, based on the way she handled the debt collection case in state court.  He alleges her conduct violated the FDCPA.[10]

A. *The Statute*

Congress passed the FDCPA to, among other things, "eliminate abusive debt collection practices by debt collectors."[11]  In this law, Congress prescribed numerous procedures that debt collectors must follow.  Relevant to this case are the procedures that govern a debt collector's "initial communication" with a debtor.[12]  Whenever a debt collector initially communicates with a debtor, the debt collector must do two things.

---

[6] *Id.* ¶ 22.

[7] *Id.* ¶ 24.

[8] *Id.* ¶ 33.

[9] *Id.* ¶¶ 33–35.

[10] Mr. Cheatham also brings a claim under the AFDCPA.  The state law provisions are nearly identical to those in the federal FDCPA, so the Court's discussion in the Background Section applies to both unless otherwise noted.

[11] *Id.* § 1692(e).

[12] *Id.* §§ 1692e(11), 1692g.

First, the debt collector must disclose that it is "attempting to collect a debt and that any information obtained will be used for that purpose."[13] Second, within five days of the initial communication, it must provide the debtor with a so-called "verification rights notice" containing: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that the debtor may dispute the validity of the debt within thirty days and that failure to dispute the debt allows the debt collector to assume the debt is valid; (4) a statement that if the debtor does dispute the debt within the thirty day period that the debt collector will provide information verifying the debt; and (5) a statement that upon written request within the thirty day period the debt collector will provide the debtor with the name and address of the original creditor if that name and address is different from the current creditor.[14] Formal legal pleadings, such as a complaint in a debt collection lawsuit, are exempted from the definition of "initial communication."[15]

B. Ms. Adams's Conduct

Mr. Cheatham was served with the Complaint and Summons in the state court debt collection lawsuit on September 3, 2019.[16] He retained an attorney to defend him in that lawsuit and then filed his Answer on October 2, 2019.[17] Discovery began. On October 31, 2019, Ms. Adams sent an email to Mr. Cheatham's attorney providing responses to Mr. Cheatham's discovery requests.[18] Mr. Cheatham alleges that Ms. Adams violated the FDCPA because the

---

[13] *Id.* § 1692e(11).

[14] *Id.* § 1692g(a)(1)–(5).

[15] *Id.* §§ 1692e(11), 1692g(d); Ark. Code. Ann. § 17-24-506(b)(11)(B). *But see* Ark. Code Ann. § 17-24-508 (not providing an express exemption of formal legal pleadings). Section 17-24-508 is the state law mirror to 15 U.S.C. § 1692g. Because Mr. Cheatham's claims under both the FDCPA and the AFDPCA are based on the same email communication—and there are no arguments made that this email communication falls within the "formal legal pleading" exemption—the lack of an exemption in the state statute is immaterial.

[16] Pl.'s First Am. Compl. (Doc. 4) ¶ 25.

[17] *Id.* ¶¶ 26–27.

[18] *Id.* ¶¶ 29–30. Mr. Cheatham did not attach either the email or the discovery responses to his Complaint.

email to Mr. Cheatham's attorney constituted an "initial communication" that triggered an obligation to provide the notices required under the FDCPA.[19] Neither the cover email nor the discovery responses contained the notices required by the FDCPA, and no other written notices were sent to Mr. Cheatham within five days of this email.[20]

Mr. Cheatham brings this suit under the private right of action created by the FDCPA. He is seeking statutory damages, actual damages, and a reasonable attorney's fee.[21]

## II. DISCUSSION

Ms. Adams says Mr. Cheatham lacks standing to bring his claim. This is an argument to dismiss based on lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[22] Ms. Adams's argument is a "facial attack" on Mr. Cheatham's standing.[23] A facial attack on standing requires this Court to confine its analysis solely to the face of Mr. Cheatham's Complaint and accept as true all of Mr. Cheatham's non-conclusory factual allegations.[24]

Article III of the United States Constitution only extends the federal judicial power to "cases and controversies."[25] By requiring that plaintiffs have standing, federal courts ensure that they do not step outside their constitutional boundaries and render binding decisions in disputes

---

[19] *Id.* ¶ 30–32.

[20] *Id.* ¶ 31.

[21] *Id.* ¶ 50.

[22] Ms. Adams has also asked the Court to dismiss based on failure to state a claim under Rule 12(b)(6). Because the Court finds that Mr. Cheatham does not have standing to bring this suit at all, the Court does not reach the 12(b)(6) issue.

[23] Def.'s Br. in Supp. of Renewed Mot. to Dismiss (Doc. 7) at 2.

[24] *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). The face of Mr. Cheatham's Complaint includes all materials "necessarily embraced by the pleadings and exhibits attached to the complaint." *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)). Any additional factual allegations contained in Mr. Cheatham's Brief in Opposition to the Motion to Dismiss or his Response to Ms. Adams's Notice of Supplemental Authority are not considered.

[25] *Braitberg v. Charter Communications, Inc.*, 836 F.3d 925, 929 (8th Cir. 2016).

that do not rise to the level of a case or controversy. Thus, standing is the "irreducible constitutional minimum" that must be met before a federal court has jurisdiction to hear a plaintiff's claim.[26] Standing requires that: (1) the plaintiff has suffered an injury-in-fact; (2) the plaintiff's injury is fairly traceable to the alleged wrongdoing of the defendant; and (3) a favorable judicial decision will cure the plaintiff's injury.[27]

Ms. Adams's primary contention in her Motion to Dismiss is that Mr. Cheatham has not suffered an injury-in-fact.[28] Article III standing requires that Mr. Cheatham's injury "be both concrete and particularized and actual or imminent, not conjectural or hypothetical."[29] In this case, the Court is concerned specifically with the "concreteness" of Mr. Cheatham's alleged injuries. An injury is concrete when it "actually exist[s]."[30] Mr. Cheatham takes several swings at establishing a concrete injury. For the reasons discussed below, Mr. Cheatham strikes out.[31]

Mr. Cheatham first claims that the alleged violations of the FDCPA, standing alone, are sufficient injuries-in-fact.[32] When Congress passes a statute that creates new rights for individuals

---

[26] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[27] *Lujan*, 504 U.S. at 560.

[28] Def.'s Br. in Supp. of Renewed Mot. to Dismiss (Doc. 7) at 4–7.

[29] *Braitberg*, 836 F.3d at 929 (quoting *Lujan*, 504 U.S. 560) (internal quotations omitted).

[30] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Concrete does not necessarily mean tangible. "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). Mr. Cheatham says the harm alleged in this case (failure to obtain information) is concrete because it "is analogous to a suit for an accounting at common law because both provide an aggrieved party the right to information important to them." Pl.'s Opp'n to Mot. to Dismiss (Doc. 8) at 16. Whether this is a fair comparison is a question for another day. Mr. Cheatham has not alleged a concrete injury because he does not allege that he was actually deprived of any information. Even if he was, he suffered no consequences from that deprivation. *See infra* notes 51–67 and accompanying text.

[31] It is important to note that when the Court analyzes Mr. Cheatham's alleged injuries, it is not making any judgment as to whether Ms. Adams did or did not violate the FDCPA. If Mr. Cheatham had standing, the Court would reach those issues as part of Ms. Adams's Motion to Dismiss for Failure to State a Claim. But Mr. Cheatham does not have standing. So, the Court does not address whether the facts alleged by Mr. Cheatham, taken as true, state a plausible violation of the FDCPA.

[32] Pl.'s First Am. Compl. (Doc. 4) ¶¶ 41, 46.

and gives those individuals a cause of action to enforce those rights, one could be forgiven for believing that any violation of those rights is sufficient to confer standing.[33] For a while, many federal courts followed this line of thinking.[34] But no longer. In *Spokeo, Inc. v. Robins*, the Supreme Court clarified that while a violation of an individual's statutory rights may be a "particularized" injury, it is not necessarily a "concrete" one.[35]

Mr. Cheatham's violation-as-injury argument is based on the notion that the FDCPA "represents congressional judgment" that a statutory violation "will confer standing."[36] In *Spokeo*, the Supreme Court did recognize that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements."[37] But the Court also made clear that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury *even in the context of a statutory violation*."[38]

A "bare procedural violation, divorced from any concrete harm," is insufficient under Article III because a procedural violation "may result in no harm."[39] There must be something more than just the statutory violation. Mr. Cheatham must show that the specific alleged violation caused him harm.[40] As the Supreme Court recently noted, "Article III grants federal courts the

---

[33] *See Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.").

[34] *See Braitberg*, 836 F.3d at 929–30 (discussing pre-*Spokeo* cases in which the statutory violation alone was sufficient to confer Article III standing).

[35] 136 S. Ct. at 1548.

[36] Pl.'s First Am. Compl. (Doc. 4) ¶¶ 41, 46.

[37] 136 S. Ct. at 1549.

[38] *Id.* (emphasis added).

[39] *Id.* at 1549, 1550.

[40] *Id.* at 1550 (remanding the case because the lower court "did not address . . . whether the *particular* procedural violations alleged *in this case* entail a degree of risk sufficient to meet the concreteness requirement" (emphasis added)).

power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."[41]  While Congressional judgment is "instructive," it cannot "transform something that is not remotely harmful into something that is."[42]  Thus, simply alleging that Ms. Adams violated the FDCPA's "initial communication" procedures is insufficient, without more, to confer standing.

Mr. Cheatham also claims that Ms. Adams's alleged violations of the FDCPA caused him concrete harm "because Adams was seeking a judgment against Cheatham for an amount of money he did not actually owe to Gibson [Auto]."[43]  The Court reads this as Mr. Cheatham saying that the alleged violations posed a risk of real harm to Mr. Cheatham.  *Spokeo* did acknowledge that "the risk of real harm" can be enough in some circumstances to establish a concrete injury.[44]  When Mr. Cheatham filed his First Amended Complaint, and when the parties briefed this Motion, *Spokeo* was the most recent Supreme Court precedent on the concreteness of a plaintiff's injury flowing from a defendant's statutory violation.  Things have changed.  In June 2021, the Supreme Court ruled in *TransUnion LLC v. Ramirez* and addressed the "risk of real harm" issue in depth.[45]

*Ramirez* casts significant doubt that "a risk of real harm" is sufficient to confer standing in a case where a plaintiff seeks monetary damages for a statutory violation.[46]  The *Ramirez* Court found "persuasive" the argument that "time will eventually reveal whether the risk materializes in

---

[41] *Ramirez*, 141 S. Ct. at 2205 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.)).

[42] *Id.* at 2204–05.

[43] Pl.'s First Am. Compl. (Doc. 4) ¶ 44.

[44] 136 S. Ct. at 1549.

[45] 141 S. Ct. 2190 (2021).

[46] The *Ramirez* Court noted that *Spokeo*'s contemplation of a "risk of real harm" as a concrete injury was based on an even earlier Supreme Court case regarding *injunctive* relief.  *Id.* at 2210.  Because "a plaintiff must 'demonstrate standing separately for each form of relief sought,'" *Ramirez* suggests that "a risk of future harm" is appropriate for plaintiffs seeking prospective injunctive relief, but not for plaintiffs seeking compensatory monetary damages.  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 185 (2000)).

the form of actual harm."[47]  In the event that a *risk* of real harm turns into *real* harm, "the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages."[48]  The *Ramirez* Court described the plaintiffs' failure to "demonstrate that the risk of future harm materialized" as a "*fundamental problem* with their argument based on the risk of future harm."[49]  Mr. Cheatham does not, and seemingly cannot, alleged that any risk created by Ms. Adams's alleged violations ever materialized into real harm.  Mr. Cheatham's debt to Gibson Auto was legally erased in state court and his attorney's fees were paid by Gibson Auto.  Thus, even if Ms. Adam's alleged violation posed a *risk* of Mr. Cheatham paying a debt "he did not actually owe to Gibson [Auto]," that harm never materialized.[50]

Finally, Mr. Cheatham claims that he suffered a concrete injury because Ms. Adams's violation caused him not to obtain the "information required by" the FDCPA.[51]  But *Ramirez* is clear that an "asserted informational injury that causes no adverse effects cannot satisfy Article III."[52]  For standing, Mr. Cheatham must display "downstream consequences" flowing from the informational "injury."[53]  He did not do so.  Mr. Cheatham's own Complaint shows that he did in fact receive the substantive information required under the FDCPA.  He just did not receive that information in the exact manner prescribed under the FDCPA's procedures.  Take the state court Complaint that Ms. Adams filed against Mr. Cheatham on behalf of Gibson Auto, for example.[54]

---

[47] *Id.* at 2210–11.

[48] *Id.* at 2211.

[49] *Id.* (emphasis added).

[50] Pl.'s First Am. Compl. (Doc. 4) ¶ 44.

[51] *Id.* ¶¶ 45, 47.

[52] *Ramirez*, 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

[53] *Id.* (quoting *Trichell*, 964 F.3d at 1004).

[54] Ex. 1 (State Court Complaint) to Pl.'s First. Am. Compl. (Doc. 4-1) at 2–9.  The Court recognizes that, under the FDCPA, this Complaint was not an "initial communication" that triggered Ms. Adams's obligation to provide a verification rights notice.  But that issue goes to whether Ms. Adams violated the FDCPA.  The merits of the alleged violations are not the Court's concern at this stage of the case.  Mr. Cheatham must show a "concrete" injury based

This Complaint contains the amount owed and the name of the creditor as required by 15 U.S.C. § 1692g(a)(1)–(2).[55]  It also contains a copy of the original contract between Mr. Cheatham and Gibson Auto, as well as an affidavit stating the amount still owed.[56]  In the Eighth Circuit, this substantive information would be a "verification" under § 1692g(a).[57]

Similarly, Mr. Cheatham's Complaint shows that he already had the substantive information required by § 1692e(11).  That provision required Ms. Adams to disclose that she was "attempting to collect a debt and that any information obtained will be used for that purpose."[58]  By the time the alleged violation occurred, Mr. Cheatham had hired an attorney, filed an Answer, and sent discovery requests to Ms. Adams.[59]  No matter how favorably one reads his Complaint, his allegations make it impossible to believe that Mr. Cheatham was unaware that Ms. Adams was a debt collector.  Indeed, nowhere in his Complaint does Mr. Cheatham allege that he did not know that Ms. Adams was a debt collector trying to collect a debt Mr. Cheatham owed to Gibson Auto.  Mr. Cheatham's Complaint may allege a failure to follow the statutory procedures, but it essentially admits that Mr. Cheatham had all the substantive information required by the FDCPA before the alleged technical violation.  In any event, even if Mr. Cheatham's Complaint alleged that he did not receive *any* of the substantive information required under the FDCPA, he has still failed to allege any consequences.  Any violations that Ms. Adams may have committed did not

---

on his failure to obtain the information required by the FDCPA.  His own Complaint shows that he did in fact receive this information.  He simply did not receive the information under the procedures prescribed by the FDCPA.

[55] *Id.* at 2.

[56] *Id.* at 2–3.

[57] *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 999, 1003 (8th Cir. 2011) (finding that a letter from the debt collector to the debtor containing the debtor's personal identification information, the current amount owed, and "an affidavit of one of [the debt collector's] employees averring that according to [the debt collector's] records, [the debtor] incurred a debt from [the creditor]" was a sufficient verification under § 1692g).

[58] 15 U.S.C. § 1692e(11).

[59] Pl.'s First Am. Compl. (Doc. 4) ¶¶ 26–30.

cause Mr. Cheatham to pay a debt he did not owe and did not cause him to lose money paying an attorney to defend against paying a debt he did not owe.

The closest Mr. Cheatham comes to alleging a downstream consequence is his allegation that "Adams' failure to provide a verification rights notice meant that Cheatham lost the thirty-day pause in collection activity, a substantive right, while Adams verified the debt as required by the FDCPA."[60] The verification rights notice creates a thirty-day *window*.[61] Within that thirty-day window, a debtor has the *option* to dispute the debt and require the debt collector to provide verification.[62] *If* the debtor disputes the debt within the thirty-day window, *then* the debt collector must pause collection activities, but *only until* the debt-verifying information is "mailed to the [debtor] by the debt collector."[63] Thus, the pause lasts only as long as it takes for the debt collector to provide the debtor with the information verifying the debt owed.

Mr. Cheatham does not allege that he would have disputed the debt had he been given the—technically—proper verification rights notice.[64] There is therefore nothing to allege that he

---

[60] *Id.* ¶ 43 (errors omitted).

[61] 15 U.S.C. § 1692g(a), (b).

[62] *Id.* § 1692g(a)(3)–(5), (b).

[63] *Id.* § 1692g(b). The only thing close to a "pause" that automatically arises from § 1692g is that a debt collector's activities during the thirty-day window "may not overshadow or be inconsistent with the disclosure of the" right to dispute the debt. *Id.* Still, even with that limitation, the statute expressly allows "[c]ollection activities and communications that do not otherwise violate this chapter [to] continue," so long as the debtor has not disputed the debt. *Id.*

[64] As then-Judge Barrett put it when sitting on the Seventh Circuit, Mr. Cheatham's Complaint alleges only that he was "missing some information that [he] did not suggest that [he] would ever have used." *Casillas*, 926 F.3d at 334 (Barrett, J.). *Casillas* was a case regarding insufficient notice of a debtor's verification rights under 15 U.S.C. § 1692g and was favorably cited multiple times by the Supreme Court in *Ramirez*.

Here, disputing the debt under § 1692g would not have made much practical sense, after all. For one, Mr. Cheatham was represented by an attorney and defending against the state court debt collection lawsuit, so he was already disputing the debt in that sense. Second, the alleged violation is flowing from discovery *responses* in a debt collection lawsuit. It strains reason to believe that a debtor's attorney would not request the exact same verifying information required by the FDCPA in those discovery responses. So, as a practical matter, it is unclear (and not alleged) what additional information Mr. Cheatham and his attorney would have obtained from disputing the debt under § 1692g. It therefore makes perfect sense that Mr. Cheatham does not allege that he missed out on any opportunity to dispute the debt under § 1692g.

lost out on *any* statutorily mandated pause in collection activities. Moreover, even if he had alleged an intent to dispute the debt under § 1692g, there is no reason from the Complaint to think it would have taken Ms. Adams thirty days to verify the debt. All the information necessary to verify the debt was already in her possession (and Mr. Cheatham's).[65] It would have been as simple as re-sending the Complaint. No matter what *might* have happened, Mr. Cheatham has not alleged *any* consequences from these alleged violations. His debt was erased in state court and his attorney was paid for by Gibson Auto.

In sum, Mr. Cheatham is not alleging that he did not receive the actual information required by the FDCPA. His Complaint shows only that he got it "*in the wrong format*" or at the wrong time.[66] Without "downstream consequences," this is not a concrete injury. Without a concrete injury, Mr. Cheatham does not have standing.[67]

## CONCLUSION

Mr. Cheatham does not have standing to bring this suit. Taking every factual allegation in his Complaint as true, Mr. Cheatham has not alleged a concrete injury flowing from any alleged violation of the FDCPA. The violation itself is insufficient. Any risk of real harm that Mr. Cheatham was exposed to never materialized into an actual harm. Mr. Cheatham received all of the substantive information required by the FDCPA. Even if he did not, he has not alleged any "downstream consequences" resulting from Ms. Adams's alleged failure to provide that information. Mr. Cheatham won the state court lawsuit. His debt was legally erased. His attorney

---

[65] *See supra* notes 53–57 and accompanying text.

[66] *Ramirez*, 141 S. Ct. at 2214 (emphasis in original).

[67] *Id.* ("No concrete harm, no standing.").

was paid for by his former creditor. Article III does not allow Mr. Cheatham and his attorney to treat the FDCPA as a green light to take a victory lap in federal court.[68]

Ms. Adams's Motion to Dismiss with Prejudice is GRANTED in part. Mr. Cheatham's FDCPA and AFDCPA claims are dismissed, but without prejudice, for lack of standing.[69]

IT IS SO ORDERED this 22nd day of September 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[68] The same analysis applies to Mr. Cheatham's AFDCPA claims. "To pursue state-law claims in federal court, a party must prove that it has standing under Article III's case-or-controversy requirement." *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018). This Order only addresses Article III standing to bring a claim in federal court. It makes no judgment as to whether Mr. Cheatham would have standing to bring his claims in Arkansas state court.

[69] "A dismissal for lack of standing is a dismissal for lack of subject-matter jurisdiction. 'A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent.'" *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019) (quoting *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004)).